NORA J CHOROVER (Bar No. 547352)    Filed Electronically:  August 30, 2016
Law Office of Nora J. Chorover
11 Green Street
Boston, MA 02130
617-477-3550

Attorney for Plaintiff
CLEAN WATER ACTION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CLEAN WATER ACTION,<br><br>                         Plaintiff,<br><br>        v.<br><br>CHEMIPLASTICA, INC.,<br><br>                         Defendant. | Case No.     1:16-cv-11764<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>(Clean Water Act,<br>33 U.S.C. §§ 1251 to 1387) |

CLEAN WATER ACTION ("CWA") by and through its counsel, hereby alleges:

**INTRODUCTION**

1.      This is a civil suit brought under the citizen suit enforcement provisions of the Clean Water Act, 33 U.S.C. § 1251, et seq. (the "Clean Water Act" or "the Act"). Plaintiff seeks declaratory judgment, injunctive relief, and other relief the Court deems appropriate for defendant's illegal discharges of polluted stormwater into the Mill River both directly and through the City of Northampton's municipal storm drain system. Chemiplastica, Inc. ("Chemiplastica") operates a plastics materials and synthetic resins manufacturing facility adjacent to the Mill River at 238 Nonotuck Street, Village of Florence, City of Northampton, MA 01062 (the "Facility").  As rain or snow melt comes into contact with the Facility, it picks up pollutants and flows into the Mill River both directly and via the municipal storm drain system.

2.      Chemiplastica has not consistently complied with requirements for controlling and monitoring industrial stormwater discharges under the Clean Water Act. In particular, the company has inconsistently reported on its stormwater discharges to the EPA. On three of the four occasions when the company did report numbers, the concentration of Zinc was in excess of the applicable EPA benchmark value. This indicates that the company did not take adequate corrective action to reduce the presence of Zinc in its stormwater discharges.

3.      Since Chemiplastica has not properly monitored its discharges, it cannot have been ensuring that it is adequately controlling levels of pollutants in its stormwater discharges.

4.      Stormwater pollution is a significant source of water quality problems for the nation's waters. The Massachusetts Department of Environmental Protection has determined that stormwater runoff represents the single largest source responsible for water quality impairments in the Commonwealth's rivers, lakes, ponds, and marine waters.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States).

6.      On April 25, 2016, Plaintiff provided notice of Defendant's violations of the Act, and of its intention to file suit against Defendant (the "Notice Letter"), to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region 1; the Commissioner of the Massachusetts Department of Environmental Protection ("DEP"); and to Defendant, as required by the Act, 33 U.S.C. § 1365(b)(1)(A).

7.      More than sixty days have passed since notice was served on Defendant and the state and Federal agencies. Plaintiff is informed and believes, and thereupon alleges, that neither EPA nor the Commonwealth of Massachusetts has commenced or is diligently prosecuting a court action to redress the violations alleged in this complaint. This action is not barred by any prior administrative penalty under Section 309(g) of the Act, 33 U.S.C. § 1319(g).

8.      Venue is proper in the District Court of Massachusetts pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

## PARTIES

9.      Plaintiff CLEAN WATER ACTION ("CWA") is a nationwide non-profit public benefit corporation organized under the laws of the District of Columbia, with its principle New England office located in Boston, Massachusetts. CWA has approximately 50,000 members who live, recreate, and work in and around waters of the Commonwealth of Massachusetts, including the Mill River. CWA works to protect the nation's water resources. To further this goal, CWA actively seeks Federal and state agency implementation of the Act and other laws and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

10.     Members of CWA have a recreational, aesthetic and/or environmental interest in the Mill River. One or more of such members use and enjoy the Mill River for recreation, sightseeing, wildlife observation and/or other activities in the vicinity of and downstream of Defendant's discharges. These members use and enjoy the waters into which Defendant has caused, is causing, and will continue to cause, pollutants to be discharged. The interests of CWA's members have been, are being, and will continue to be adversely affected by Defendant's failure to comply with the Clean Water Act, as alleged herein. The relief sought herein will redress the harms to Plaintiff caused by Defendant's activities.

11.     Continuing commission of the acts and omissions alleged herein will irreparably harm Plaintiff and the citizens of the Commonwealth of Massachusetts, for which harm they have no plain, speedy, or adequate remedy at law.

12.     Defendant Chemiplastica is a foreign corporation organized under the laws of the State of Delaware that operates a plastics, synthetics and resins facility in the Village of Florence, City of Northampton, Massachusetts.

## STATUTORY BACKGROUND

13.     <u>Pollutant Discharges without a Permit are Illegal</u>. The Clean Water Act makes the discharge of pollution into waters of the United States unlawful unless the discharge is in compliance with certain statutory requirements, including the requirement that the discharge be permitted by the Federal Environmental Protection Agency ("EPA") under the National Pollutant Discharge Elimination System ("NPDES"). Sections 301(a), 402(a) and 402(p) of the Act. 33 U.S.C. §§ 1311(a), 1342(a), 1342(p).

14.     <u>EPA Has Made Stormwater Discharges from Plastics, Synthetics, and Resins Manufacturing Facilities Subject to the Requirements of EPA's General Industrial Stormwater Permit</u>. In order to minimize polluted stormwater discharges from industrial facilities, EPA has issued a general industrial stormwater permit ("Stormwater Permit"). EPA first issued the Stormwater Permit in 1995 and reissued the permit in 2000, 2008, and 2015. See 60 Fed. Reg. 50804 (Sept. 29, 1995); 65 Fed. Reg. 64746 (Oct. 30, 2000); 73 Fed. Reg. 56572 (Sept. 29, 2008); 80 Fed. Reg. 34403 (June 4, 2015).  Plastics, Synthetics, and Resins manufacturing facilities are subject to the requirements of this Stormwater Permit. Stormwater Permit, Appendix D, pg. 1.

15.     <u>Plastics, Synthetics, and Resin Manufacturing Facilities Must Comply with the Requirements of the Stormwater Permit</u>. The Stormwater Permit requires these facilities to, among other things:

   a.   ensure that pollutant control measures minimize pollutants in stormwater discharges, Stormwater Permit, pg. 14;

   b.   ensure that stormwater discharges do not cause or have the reasonable potential to cause or contribute to a violation of water quality standards, Stormwater Permit, pg. 20;

   c.   conduct monitoring of stormwater discharges at all Facility outfalls in each of the first four full quarters of permit coverage for compliance with benchmark limitations applicable

specifically to plastics, synthetics and resin manufacturing facilities.  Stormwater Permit, pgs. 59;

d.  report all monitoring results for all Facility outfalls to EPA by specified deadlines, Stormwater Permit, pgs. 48-49;

e.  conduct corrective action after the average of four quarterly samples exceeds EPA benchmark value, Stormwater Permit, pgs. 27, 42;

f.  conduct routine facility inspections at least quarterly (Stormwater Permit, pg. 22) and quarterly visual assessments (Stormwater Permit, pg. 24) to, among other things, sample and assess the quality of the facility's stormwater discharges, ensure that stormwater control measures required by the Permit are functioning correctly and are adequate to minimize pollutant discharge, and timely perform corrective actions when they are not, Stormwater Permit, pgs. 22-26;

g.  timely prepare and submit to EPA annual reports that include findings from the facility inspections and visual assessments and the documentation of corrective actions, Stormwater Permit, pgs. 49-50; and

h.  comply with any additional state requirements, *see* Stormwater Permit, pgs. 170-173.

16.  <u>Citizens May Bring an Action to Enforce these Requirements</u>. Section 505(a)(1) and Section 505(f) of the Act provide for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for unpermitted discharges of pollutants. 33 U.S.C. §§ 1365(a)(1) and (f), § 1362(5). An action for injunctive relief under the Act is authorized by 33 U.S.C. § 1365(a). Violators of the Act are also subject to an assessment of civil penalties of up to $37,500 per day, pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d), 1365 and 40 C.F.R. §§ 19.1 - 19.4.

## STATEMENT OF FACTS

17.  Defendant owns and operates a plastics material and synthetic resins manufacturing facility at 238 Nonotuck Street, Village of Florence, City of Northampton, Massachusetts (the "Facility")

5

18.     On January 5, 2009 Chemiplastica submitted a Notice of Intent to be covered by the Stormwater Permit.

19.     On October 1, 2015 Chemiplastica submitted a Notice of Intent to be covered by the reissued Stormwater Permit.

20.     During every rain event, rainwater coming into contact with the Facility becomes contaminated with pollutants.

21.     When rainwater is discharged from the Facility it flows to the Mill River both directly and via the municipal storm drain system.

22.     The Stormwater Permit places benchmark standards on Zinc in the company's stormwater discharges.

23.     Metals such as Zinc at excessive concentrations are toxic to fish, aquatic plants, and other aquatic life.

24.     Concentrations of Zinc can affect the reproductive systems of aquatic life, resulting in severe population declines. As Zinc is a toxic metal with a long biological half-life it bioaccumulates in organisms over time. Zinc is also hazardous to human life if it enters the water supply.

## FIRST CAUSE OF ACTION

**Failure to Comply with the Monitoring Requirements of the Stormwater Permit:
Violations of 33 U.S.C. § 1311(a)**

25.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herin.

26.     Since submitting its January 5, 2009 Notice of Intent to be covered by the Stormwater Permit, Defendant failed to consistently comply with the requirement in Section 6.2.1.2 of the Stormwater Permit to conduct quarterly benchmark monitoring for Total Zinc.

27.     Chemiplastica was required to monitor for the presence of Total Zinc in its stormwater discharges for each quarter commencing with the April 1, 2011 to June, 30 2011 quarter. Quarterly

6

monitoring is required to continue until four consecutive quarterly samples show that the company's discharges are below the applicable EPA benchmark levels.

28.     During several monitoring quarters where stormwater discharged from the Facility to the Mill River, Chemiplastica failed to monitor its stormwater discharges' Total Zinc levels.

29.     Defendant has failed to comply with its obligation to monitor Total Zinc at all outfalls until the average of four consecutive monitoring values for Total Zinc is shown to be below the applicable benchmark.

30.     These violations establish an ongoing pattern of failure to comply with the Permit's monitoring requirements.

31.      Each of Defendant's violations of the monitoring requirements of the Stormwater Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a), for each day on which the failure to monitor occurred and/or continued. Alternatively, each of these violations is a separate and distinct violation for each day on which stormwater was discharged from the facility and on which the violation occurred and/or continued.

## SECOND CAUSE OF ACTION

### Failure to Comply with the Reporting Requirements of the Stormwater Permit: Violations of 33 U.S.C. § 1311(a)

32.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herin.

33.     Defendant has failed to consistently comply with the Stormwater Permit's requirement for reporting benchmark monitoring results to EPA. Stormwater Permit, sections 6.1.9 and 7.4. (Previous relevant sections: 4.3.1, 4.3.2, 7.2). Defendant's violations of the Permit's reporting requirements are separate and distinct from violations of the Permit's monitoring requirements.

34.     These violations establish an ongoing pattern of failure to comply with the Permit's reporting requirements.

35.     Each of Defendant's violations of the benchmark monitoring reporting requirements of the Stormwater Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C.

§ 1311(a), for each day on which the failure to report occurred and/or continued. Alternatively, each of these violations is a separate and distinct violation for each day on which stormwater was discharged from the facility and on which the violation occurred and/or continued.

### THIRD CAUSE OF ACTION

**Failure to Reduce and/or Eliminate Pollutants to the Extent Achievable:
Violations of 33 U.S.C. § 1311(a)**

36.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herin.

37.     Since at the latest August 31, 2011 to the present, Chemiplastica has failed to properly monitor its stormwater discharges and therefore cannot have ensured that its control measures reduce and/or eliminate pollutants in its stormwater discharges to the extent achievable, using control measures (including best management practices) that are technologically available and economically practicable and achievable in light of best industry practice. Stormwater Permit, section 2.0 (pg. 14).

38.     Each of Defendant's violations of the reduction and/or elimination requirements of the Stormwater Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a), for each day on which the violation occurred and/or continued. Alternatively, each of these violations is a separate and distinct violation for each day on which stormwater was discharged from the Facility and on which the failure to reduce and/or eliminate pollutants occurred and/or continued.

### RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

1.     Declare Defendant to have violated and to be in violation of the Act as alleged herein;

2.     Enjoin Defendant from discharging stormwater containing excessive levels of pollutants from the Facility;

3.     Require Defendant to implement the requirements of the Stormwater Permit;

4.      Order Defendant to pay civil penalties of up to $37,500 per day of violation, pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a) and 74 Fed. Reg. 626, 627 (2009);

5.      Order Defendant to take appropriate actions to restore the quality of navigable waters impaired by its activities;

6.      Award Plaintiff's costs (including reasonable investigative, attorney, witness, and consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d); and

7.      Award any such other and further relief as this Court may deem appropriate.


Dated: 8/30/2016                          Respectfully submitted,


                                          *Nora J. Chorover /s/*
                                          NORA J. CHOROVER (Bar No. 547352)
                                          Law Office of Nora J. Chorover
                                          11 Green Street
                                          Boston, MA 02130
                                          Phone: 617-477-3550
                                          nchorover@choroverlaw.com

                                          Attorney for Plaintiff
                                          CLEAN WATER ACTION


## CLEAN WATER ACTION'S CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure and Massachusetts District Court Local Rule 7.3, Plaintiff Clean Water Action states that it does not have a parent corporation and no publicly held company owns 10% or more of its stock.